**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM A. EYLER, III, on behalf
of himself and all others similarly
situated,

        Plaintiff,

vs.                                  Case No. 3:08-cv-351-J-32JRK

ILD TELECOMMUNICATIONS, INC.,
a Delaware Corporation, and
TELSEVEN, LLC, a Florida limited
liability company,

        Defendant.

_____

**ORDER**[1]

This case is before the Court on Plaintiff's Motion To Remand, (Doc. 9), to which defendants have filed a response.  (Doc. 18.)  The parties have raised issues of federal question jurisdiction and preemption by the Federal Communications Act of 1934, removal under the Class Action Fairness Act of 2005, and of complete diversity removal of a class action.

**I.**    **Background**

"Cramming" is the practice of placing unauthorized, misleading, or deceptive

---

[1]     Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

charges on a telephone bill.  Plaintiff William A. Eyler, III alleges that defendants, IDL

Telecommunications, Inc. and TelSeven, LLC engaged in "cramming" on his

telephone bill.  He brought a four-count state court action against defendants alleging

they each violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")

and they are each liable for common law unjust enrichment.  (Doc. 2.)  Eyler alleges

the following "cramming" occurred:

> 19.   . . . [O]ne method of cramming involves unauthorized
> vendors[2] making unauthorized charges to the telephone
> bills of line subscribers who call 800, 877, or 888 numbers
> that are commonly understood by consumers to be toll-free.
>
> 20.   . . . [I]f a consumer misdials an 800, 877, or 888
> number, they are commonly and unwittingly connected to a
> number owned by an unauthorized vendor.  Unauthorized
> vendors select 800, 877, or 888 numbers that closely
> resemble toll-free numbers of other entities frequently
> called by consumers, such as government agencies or
> major corporations.   A recorded message instructs the
> consumer to dial a short combination of numbers to reach
> the number they originally intended to dial.
>
> 21.   . . . [I]f the consumer dials the combination of
> numbers as instructed by the recording, they are connected
> to the number they originally intended to dial, and assessed
> charges by the unauthorized vendor.   The recorded
> message does not provide consumers with fair and

---

[2]   Eyler defines "unauthorized vendor"  as being "an entity that offers
telecommunications services for which charges appear on telephone bills received by
line subscribers from their LECs [local telephone company]."  (Doc. 2 at 4 (Complaint
¶ 16).)  Eyler defines "Local Exchange Carrier" or "LEC" as "the local telephone
company from which a telephone line subscriber received his or her telephone bill."
(Doc. 2 at 3 (Complaint ¶ 13).)

adequate notice that they will be billed for being connected to the number they originally intended to dial.

22.    As a result of this scheme, . . . unauthorized charges are placed on consumers' telephone bills for dialing numbers that the consumer understood to be toll-free.

23.    . . . [O]nce an unauthorized vendor decides to place charges on a line subscriber's bill, a billing aggregator[3] receives billing information from an unauthorized vendor, then arranges for the charges to be placed on the LECs [Local Exchange Carrier] to the consumer.

24.    . . . [W]hen a consumer pays a bill from the LEC, the LEC takes a portion of the funds from the billing aggregator's charges, then transmits the remaining funds to the billing aggregator.  The billing aggregator then takes another portion of the funds and transmits the remaining funds to the unauthorized vendor.

(Doc. 2 at 4-5 (Complaint ¶¶ 19-24).)  Eyler alleges he received a telephone bill that contained unauthorized charges from ILD, which he alleges is a "billing aggregator," and that the bill identified the "unauthorized vendor" as "Calling 10," which he alleges is a fictitious name for defendant TelSeven.  (Doc. 2 at 5-6 (Complaint ¶¶ 25-29).)

Eyler brought this putative class action on behalf of himself and a class of "[a]ll Florida persons or entities who were telephone line subscribers from March 14, 2004

_____

[3]    Eyler defines "billing aggregator" as "an entity that, on behalf of one or more unauthorized vendors, arranges to have charges for the unauthorized vendors' services placed on telephone bills sent to line subscribers from their LECs [local telephone company], arranges for LECs to collect those charges from line subscribers, and arranges for unauthorized vendors to receive payment for their services."  (Doc. 2 at 3-4 (Complaint ¶ 15).)

3

to the present and whose telephone bills contained charges placed there by ILD on behalf of TelSeven, through its various fictitious names, or other unauthorized vendors."  (Doc. 2 at 6 (Complaint ¶ 31).)[4]

Defendant TelSeven removed the action to this Court  (Doc. 1)[5] alleging three bases for removal.  First, defendants maintain that plaintiff's claim involves a substantial question of federal law and is preempted by the Communications Act of 1934, as amended ("Communications Act" or "Act"), 47 U.S.C. § 201 *et seq.*  Second, defendants assert that all of the requirements for removal under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, are satisfied.  Third, defendants allege that "there is complete diversity of citizenship between all parties" (and the requisite $75,000 jurisdictional amount) making removal proper under 28 U.S.C. § 1332(a).  Eyler moves to remand, asserting that this Court lacks subject matter jurisdiction.

## II.    **Applicable Legal Standards**

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and by statute.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  It is presumed that a cause lies outside of this

---

[4]    Although Eyler seeks, in his complaint, to represent a class including "himself and all others similarly situated," no determination has been made regarding the class status of this dispute.

[5]    Defendant ILD consents to the removal.  (See Doc. 1 at 9.)

4

limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

"On a motion to remand, the removing party bears the burden of establishing jurisdiction." Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly," Univ. of S. Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999), and "all doubts about jurisdiction should be resolved in favor of remand to state court." Id. In deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, uncertainties are resolved in favor of remand. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

## III. Discussion

### A. Complete Preemption and Federal Question Jurisdiction

TelSeven urges removal based upon federal question jurisdiction saying that Eyler's claims 1) are completely preempted by the Federal Communications Act of 1934, 47 U.S.C. § 201 et seq., or alternatively they 2) present a substantial question of federal law.

"[E]ven when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims." Dunlap

v. G&L Holding Group, Inc., 381 F.3d 1285, 1290 (11th Cir. 2004).  For a state-law claim to raise substantial questions of federal law, federal law must be an "'essential element'" of plaintiff's claim and "'the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another.'"  Dunlap, 381 F.3d at 1290 (quoting Mobile Oil Corp. v. Coastal Petroleum Co., 671 F.2d 419, 422 (11th Cir. 1982)).  "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986).  "In other words, the state-law claim must 'really and substantially involve[ ] a dispute or controversy respecting the validity, construction or effect of [federal] law.'"  Dunlap, 381 F.3d at 1290 (quoting Mobile Oil, 671 F.2d at 422).  "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 313 (2005).  Furthermore, federal jurisdiction must be "consistent with congressional judgment about the sound division of labor between state and federal courts" and assess any "disruptive portent in exercising federal jurisdiction."  Grable, 545 U.S. at 313-14,  Thus, "inquiry into whether the Court has subject matter jurisdiction under the narrow substantial-federal-question doctrine involves three parts: (1) the state-law claim must necessarily raise

6

a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." <u>Schmidt v. St. Clair</u>, No. 5:07-cv-271-Oc-10GRJ, 2007 WL 4463933, at *3 (M.D. Fla. Dec. 17, 2007)(citing <u>Grable</u>, 545 U.S. at 314).

The federal court may hear "only those cases in which a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 27-28 (1983), and the plaintiff's statement of his own cause of action shows that it is based on federal law. <u>BLAB T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.</u>, 182 F.3d 851, 854 (11th Cir. 1999). "[T]he plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available.'" <u>Hill v. BellSouth Telecommunications, Inc.</u>, 364 F.3d 1308, 1314 (11th Cir. 2004)(citation omitted). A defendant cannot create a federal question by asserting an issue of federal law in a pleading or in a petition for removal. <u>Caterpiller, Inc. v. Williams</u>, 482 U.S. 386, 391-93 (1987). On the other hand, removal is proper if the plaintiff has attempted to avoid a federal forum by drafting an essentially federal claim in terms of state law. <u>Federated Dept. Stores, Inc. v. Moitie</u>, 452 U.S. 394, 397 n.2 (1981).

Federal question jurisdiction based upon "[c]omplete preemption occurs when

7

the preemptive force of the federal statute is 'so powerful as to displace entirely any state cause of action,'" Stuart Weitzman, LLC v. Microcomputer Resources, Inc., 542 F.3d 859, 865 (11th Cir. 2008)(quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7 (2003)), providing "'the exclusive cause of action for the claim asserted.'" Dial v. Healthspring of Alabama, Inc., 541 F.3d 1044, 1047 (11th Cir. 2008)(citing Beneficial Nat'l Bank, 539 U.S. at 8)).  Emanating from the Supremacy Clause, U.S. Const., art. VI, cl. 2, "[c]omplete preemption occurs when federal law so occupies a given field that a state-law claim is transformed into a claim 'arising under' federal law." Dunlap, 381 F.3d at 1290; see also Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 712-13 (1985)(because federal law is the supreme law of the land, it preempts state laws that "interfere with, or are contrary to, federal law").  "In other words, 'if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.'" Dunlap, 381 F.3d at 1290 (quoting Franchise Tax Bd., 463 U.S. at 24).  Complete preemption is found "'only in statutes with "extraordinary" preemptive force," and is extremely rare.  Dunlap, 381 F.3d at 1291.[6]

---

[6]   Federal law may preempt state law either by express, field, or conflict preemption.  Fla. State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1167 (11th Cir. 2008).  "Express preemption occurs when Congress manifests its intent to displace a state law using the text of a federal statute. . . . Field and conflict preemption in turn have been considered under the umbrella term 'implied preemption.' . . . Field preemption occurs when a congressional legislative scheme is 'so pervasive as to make the reasonable inference that Congress left no room for

"Complete preemption" operates as a narrow exception to the well-pleaded complaint rule. Smith v. Wynfield Dev. Co., 238 Fed. Appx. 451, 455 (11th Cir. 2007)(citations omitted). The doctrine of complete preemption "looks beyond the complaint to determine if the suit is, in reality, purely a creature of federal law, even if state law would provide a cause of action in the absence of the federal law, . . . thus creating the federal question jurisdiction requisite to removal to federal courts.'" Dunlap, 381 F.3d at 1290 (quoting Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1352-53 (11th Cir. 2003). "If a state law claim is completely preempted, courts are required to recharacterize the claim as one arising under federal law for purposes of determining removal jurisdiction." Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1353 (11th Cir. 1998).[7]

---

the states to supplement it.' . . . Conflict preemption occurs either when it is physically impossible to comply with both the federal and the state laws or when the state law stands as an obstacle to the objective of the federal law." Id. (citations omitted). Even in the context of express preemption, the Court is asked to decide exactly what Congress meant to preempt. See id. at 1167. Determination of whether a statute completely preempts a state cause of action "focuses primarily upon evaluating Congress's intent, which is the 'touchstone' of federal court removal jurisdiction." BLAB T.V. of Mobile, Inc., 182 F.3d at 857.

[7] So-called "ordinary preemption" which is raised as a defense based on the preemptive effect of a federal statute, will not provide a basis for removal. "[O]rdinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. . . . . Complete preemption, on the other hand, is a doctrine distinct from ordinary preemption. Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1352-53 (11th Cir. 2003). "[C]omplete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary

Defendant TelSeven argues that plaintiff's state law claims under FDUTPA involve "the reasonableness and the legality of the charge for the telecommunications services, as well as the reasonableness of the service or practice," and directly conflict "with the Congressional objectives of Sections 201(b) and 202(a) of the Communications Act," which state that unjust or unreasonable communications service charges and practices are "unlawful" and that it is "'unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, . . . or services for or in connection with . . . communication service.'" (Doc. 1 at 5 (quoting 47 U.S.C. §  201(b), 202(a)); Doc. 18 at 16.)  TelSeven contends that pursuant to the Communications Act, "federal law governs the lawfulness of telecommunications services and the validity of rates, terms and conditions of telecommunications services." (Doc. 1 at 6 (citing Boomer v. AT&T Corp., 309 F.3d 404, 418 (7th Cir. 2002).)  Second, TelSeven argues that plaintiff's challenge would result in nationally discriminatory terms, conditions and rates of service based upon the customers' location in Florida, contrary to the purposes of the Communications Act.  (Doc. 1 at 7-8.)  Third, TelSeven contends that the charges of which plaintiff complains implicate interstate carriers' contribution to the Federal Universal Service Fund, required by federal law to ensure affordable telecommunications services to

---

preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court." Smith v. GTE Corp., 236 F.3d 1292, 1313 (11th Cir. 2001)(citation omitted).

rural and low income areas.  (Doc. 1 at 8.)

The Communications Act of 1934 advances "Congress's goals of ensuring uniformity and preventing unreasonable prices or service discrimination among long-distance customers."  Dreamscape Design, Inc. v. Affinity Network, Inc., 414 F.3d 665, 669 (7th Cir. 2005).[8]  It provides a private right of action for violation of the Act:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction. . . .

47 U.S.C. §  207.   However, the chapter also provides:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. §  414.

Sections 201(b) and 202(a), cited by TelSeven as the basis for federal jurisdiction, read together express Congress' intent that long-distance customers throughout the United States receive uniform and reasonable rates, terms, and conditions of service.  Dreamscape Design, Inc., 414 F.3d at 669-70.  Thus, "state law

---

[8]   The Communications Act of 1934 does not apply to communications services that are purely intrastate in nature.  Chladek v. Verizon N.Y. Inc., 96 Fed. Appx. 19, 22 (2d Cir. 2004)(citing 47 U.S.C. §  152(b)).

'cannot operate to invalidate the rates, terms or conditions of a long-distance service contract." Dreamscape Design, Inc., 414 F.3d at 670 (quoting Boomer, 309 F.3d at 424).

In Smith v. GTE Corp., 236 F.3d 1292 (11th Cir. 2001), the Eleventh Circuit examined whether under Sections 201 and 202 of the Communications Act, the district court had federal jurisdiction - either based upon complete preemption or upon a substantial question of federal law -  over state law claims of fraud, unjust enrichment, breach of contract and breach of warranty asserted by a putative class based on an alleged scheme by defendants to defraud their customers into leasing telephones and paying exorbitant lease charges.  First, the court found "that the complete preemption doctrine does not provide a basis for federal jurisdiction in this case."  Smith, 236 F.3d at 1312; indeed, in deregulating "customer premises equipment" activity, Congress, through the Communications Act "did not intend to preempt completely state causes of action or remedies concerning the subject matter of the Act."  Id. at 1312-13 (citing 47 U.S.C. § 414).  "[T]he existence of this type of 'savings' clause which 'contemplate[s] the application of state-law and the exercise of state-court jurisdiction to some degree . . . counsels against the conclusion that the purpose behind the . . . Act was to replicate the 'unique preemptive force' of the

LMRA and ERISA.'"[9]  Smith, 236 F.3d at 1313 (quoting BLAB TV of Mobile, Inc., 182

F.3d at 857-58); accord Fedor v. Cingular Wireless Corp., 355 F.3d 1069, 1074 (7th

Cir. 2004)(rejecting argument that any claims under the Communications Act related

to the billing amount are automatically and completely preempted).

Further, the Smith court stated that nothing in the Communications Act or its

legislative history indicates that Congress intended state law causes of action within

the scope of the Communications Act to be federalized.  Smith, 236 F.3d at 1313.

The court held that the complaint did not establish a basis for federal question

jurisdiction "because it contains only state law causes of action and does not show

that 'any substantial question of federal law' is necessary for the plaintiffs to obtain

their requested relief."  Smith, 236 F.3d at 1310-11.  The court stated that the parties

may litigate any preemptive effect of the FCC's orders or the Communications Act in

state court.  Id. at 1313;  see also 47 U.S.C. §  414;

The Eleventh Circuit in Hill v. BellSouth Telecommunications, Inc., 364 F.3d

1308 (11th Cir. 2004), revisited the reach of the Communications Act, holding that a

customer's claims under a state unfair trade practices statute and for common law

fraud claiming defendant telecommunications company misled her and other

---

[9]     Complete preemption has been found in the context of the Labor Management
Relations Act (LMRA)and the Employee Retirement Income Security Act (ERISA).
Smith, 236 F.3d at 1311.

customers about filed tariffs (rates) it charged, implicated the "filed rate" doctrine[10] and thus raised substantial questions of federal law.   364 F.3d at 1317.   The court reversed the district court's granting of plaintiff's motion to remand the state fraud and statutory trade practices claim.   Id. at 1313.   The court held that the two state law claims seeking purely monetary damages "raise[d] substantial questions of federal law, and federal question jurisdiction should have attached," and that the district court erred when it denied BellSouth's motion to dismiss these claims and instead remanded them to state court.   Hill, 364 F.3d at 1317; accord e.g. AT&T v, Central Office Telephone, Inc., 524 U.S. 214, 221-22 (1998)(federal filed rate doctrine preempted breach of contract claims asserted by reseller of long-distance telephone service against long-distance telephone company inasmuch as the additional services and guarantees reseller claimed it was entitled to all pertained to subjects  specifically addressed by filed tariff); Pfeil v. Sprint Nextel Corp., 284 Fed. Appx. 640 (11th Cir. 2008)(carrier's federal tariff authorized surcharge to vacation rate service requiring

_____

[10]   "'[T]he filed rate doctrine dictates that the rates a carrier charges its customers, once filed with and approved by the FCC, become "the law" and exclusively govern the rights and liabilities of the carrier to the customer.'" Pfeil v. Sprint Nextel Corp., 284 Fed. Appx. 640, 642 (11th Cir. 2008))(quoting Hill, 364 F.3d at 1315).  "The filed rate doctrine (also known as the 'filed tariff doctrine') 'forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority.'" Hill, 364 F.3d at 1315 (quoting Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577 (1981)).  Likewise, customers may not bring any action that would invalidate, alter or add to the terms of the filed tariff, and thus, "causes of action in which the plaintiff attempts to challenge the terms of a filed tariff are barred by the filed rate doctrine." Hill, 364 F.3d at 1315.

complaint to be dismissed under the filed rate doctrine which prohibits customers from challenging filed tariffs in state or federal court).

Distinguishable on its facts, the Boomer case, cited by defendant, involved a putative class action filed by a customer against a long-distance telephone carrier, alleging that the carrier overcharged customers for contributions to federal universal services fund.   Boomer, 309 F.3d 404.   Plaintiff challenged the validity of an arbitration provision in the customer agreement as being unconscionable under state law. The court observed that the Communications Act demonstrated "a congressional intent that customers of individual long-distance carriers receive uniform terms and conditions of service; however, allowing a state law challenge to the [Customer Service Agreement] arbitration clause would result in customers receiving different terms based on their locality . . . [and] discriminatory rate structures." Id. at 418.   The court noted that though plaintiff's state law challenges to the arbitration clause were preempted because they conflicted with the federal objective of the Communications Act, presenting a substantial question of federal law, "there appears to be some role for state law" as it relates to long distance contracts and thus complete preemption does not apply.  309 F.3d at 424.

The case Bryan v. BellSouth Communications, Inc., 377 F.3d 424 (4th Cir. 2004), cited by TelSeven, is likewise distinguishable.  In Bryan, the court held that a consumer's state law statutory deceptive practices claim alleging that the carrier's

Federal Universal Service Charge listed on its required "Schedule of Charges" or "tariff" filed with the FCC exceeded its require contribution to the Universal Service Fund and was misleading.  The court determined that "[a] claim that seeks to alter the terms of the relationship between carrier and consumer set forth in a filed tariff . . . presents a federal question," providing a basis for federal question jurisdiction.  Bryan, 377 F.3d at 429, 431.  On this basis, the court dismissed the state statutory claim on its merits as being preempted by federal law based on defendant's defense.

More on point to the facts of this case is Brittan Communications Int'l Corp. v. Southwestern Bell Tel. Co., 313 F.3d 899 (5th Cir. 2002).  There, a long-distance telephone services provider ("Brittan") billed its customers via a local exchange carrier (LEC)(Southwestern) through a third party billing aggregator ("Billing Concepts") which submitted Brittan's charges along with those of other long-distance providers to Southwestern for placement on the bills of its local telephone service customers. Southwestern, the LEC, would collect the payments due, and forward the monies received to Billing Concepts, which would then transfer funds to Brittan. Southwestern and Billing Concepts had a contractual relationship; Brittan and Southwestern did not.  Southwestern notified Billing Concepts that it would no longer accept billing records from Brittan in response to "cramming" complaints by Southwestern's customers.  Brittan sued Southwestern seeking damages from Southwestern stemming from the suspension of its billing and collection services,

16

alleging violation of the Communications Act,  citing 47 U.S.C. § 202(a), common law

fraud, and violation of the Texas Deceptive Trade Practices Act.  On appeal from a

decision in favor of Southwestern, the Fifth Circuit held that the LEC Southwestern's

billing and collection services did not fall within the scope of Title II of the

Communications Act.

     The court noted that "Title II of the Communications Act outlines the duties of

common carriers in the provision of interstate or foreign communication services and

establishes procedures for enforcement of those duties.  Brittan, 313 F.3d at 904

(citing 47 U.S.C. § §  201-224).  "'[B]illing and collection services that do not utilize

communications over the common carrier's wire or radio facilities are not

'communication services' regulated by Title II of the Communications Act."  Id.

(citation omitted).  Looking to the FCC for guidance, the Brittan court quoted an FCC

decision which stated that "'carrier billing or collection for the offering of another

unaffiliated carrier is not a communication service for purposes of Title II of the

Communications Act.'"  Id. at 905 (citation omitted)(emphasis omitted).    Rather,

"billing and collection [are] 'financial and administrative service[s]' . . . [and] 'billing and

collection services provided by local exchange carriers are not subject to regulation

under Title II of the Act.'"  Id. (citation omitted).  Though in recent years "the FCC has

moved away from the position that billing and collection services are financial and

administrative services," there is no indication that "the FCC has altered its view that

17

billing and collection services provided by LECs to unaffiliated long distance providers fall outside the scope of Title II." Id. at 905-06 (citing In the Matter of Federal-State Joint Bd. on Universal Service, 13 F.C.C. Rcd. 24,744, ¶ 70 & n.87 (1998)("finding that billing and collection services are subject to Title II, but only as to a carrier's own billing and collections")); see also Chladek v. Verizon N.Y. Inc., 96 Fed. Appx. 19, 22 (2d Cir. 2004)("the FCC has determined that billing and collection services are not 'telecommunications services' as defined by Title II of the Communications Act, 47 U.S.C. § § 201 et seq.")(citations omitted); In re Long Distance Telecommunications Litigation, 831 F.2d 627, 634 (6th Cir. 1987)(Communications Act did not preempt state common law fraud and deceit, or state statutory consumer deception for claims against long distance telephone companies based on defendants' alleged failure to disclose their practice of charging for uncompleted calls, ring time and holding time); Manasher v. NECC Telecom, No. 06-10749, 2007 WL 2713845, at *14 (E.D. Mich. Sept. 18, 2007)(customers' claims that defendant telephone service provider violated state consumer protection act by charging unauthorized fees to customers were not preempted by the Federal Communications Act "because they do not challenge the reasonableness to discriminatory effect of Defendant's rates, terms or conditions [but] [i]nstead, they challenge Defendant's allegedly deceptive misrepresentations"); Schad v. Z-Tel Communications, Inc., No. 04 C 4187, 2005 WL 83337, at * 4 (N.D. Ill. Jan. 12, 2005)(granting motion to remand customers' state law claims that

telecommunications company overcharged customers by deceptively labeling various line-item charges appearing on its phone bills as being government-mandated when they were not; "complete preemption doctrine cannot support removal of Schad's state law claim to federal court" nor may "substantial federal question" doctrine); Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc., 958 F. Supp. 947 (D. Del. 1997)(customer's state law claims against cellular telephone company alleging failure to disclose the company's practice of charging for noncommunication period beginning with initiation of call not preempted by Communications Act); Castellanos v. U.S. Long Distance Corp., 928 F Supp. 753, 754-55 (N.D.Ill. 1996)(plaintiff's state law claims based on allegation of "slamming"[11] by a long distance carriers who allegedly ran up their fees by charging customers unnecessary reconnect fees to their original long distance carriers was not preempted by the Communications Act or its regulatory scheme; granting motion to remand); cf. Moriconi v. AT&T Wireless PCS, LLC, 280 F.Supp.2d 867, 876, 877-78 (E.D. Ark. 2003)(portion of Communications Act governing commercial mobile service providers does not preempt plaintiff's state deceptive trade and advertising statutory challenges to defendant wireless provider's

---

[11] "'Slamming' is a term used to describe the unauthorized switching of a customer's long-distance telephone service carrier by a long distance service provider or by a contractor, reseller, or other representative of the provider." Majorie A. Shields, State Regulation of Telephone "Slamming", 92 A.L.R.5th 1, 1 (2001) "The customer is often unaware of the switch until various long-distance charges and fees appear on the customer's telephone bill." Id.

marketing and advertising practices; plaintiff's complaint does not challenge defendant's rates or the nature of its infrastructure which determines the level of services provided but rather claims that defendants have not adequately disclosed their true "'service fees, billing, and sales practices, and service limitations'").

TelSeven's argument of "complete preemption" is put to rest by the Eleventh Circuit's decision in Smith, supra, which held that the Communications Act does not completely preempt state law causes of action within its scope.  236 F.3d at 1313. Congress expressly recognized the continued viability of state common law and statutory remedies, negating any notion that Congress intended to displace entirely any state cause of action relating to telephone billing; section 414 makes clear that the causes of action in the federal statute are cumulative to available state-law actions.

However, the Court is still charged with determining whether the claims as alleged by the complaint present a substantial question of federal law under Sections 201(b) and 202(a) which express Congress' intent that long-distance customers receive uniform and reasonable rates, terms, and conditions of service, or whether the case implicates the "filed rate" doctrine.  See Hill, 364 F.3d at 1317; Pfeil, 284 Fed. Appx. at 642.  In so doing, the Court "must examine whether the claims require the state court to assess the reasonableness of the rates charged, or impact market entry."  Fedor, 355 F.3d at 1074.  For this, the Court  is confined to plaintiff's well-

pleaded complaint to determine if there exists a disputed and substantial question of federal law, and whether the exercise of jurisdiction disrupts congressional judgment about the sound division of labor between federal and state courts.  See Grable, 545 U.S. at 313-314.

Eyler alleges only state law causes of action, foregoing any claims he may have asserted under the Federal Communications Act.  As master of his complaint, Eyler has not sued his telecommunications carrier or provider, and TelSeven has not established that it or ILD are common carriers subject to the provisions of the Federal Communications Act.  Further, the causes of action that Eyler has brought do not conflict with the provisions of the Communications Act or interfere with Congress' regulatory scheme.[12]  Nothing in the allegations of the complaint implicate the filed-rate doctrine and defendants have not adduced any evidence or allegation that the additional charges that are the subject of this suit are provided for on *any* federal tariff, let alone tariffs filed by them, nor the reasonableness of the rates charged by a common carrier, or impact on market entry.  Rather, plaintiff, has carefully alleged that defendants, TelSeven, a vendor owning a telephone number and offering callers the "service" of re-dialing a mis-dialed number for an undisclosed charge which appears

---

[12] Compare Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242 (11th Cir. 2008)(federal Graves Amendment protecting rental car companies from liability for injuries arising out of use of rental car conflicts with and preempts Florida's law imposing vicarious liability on motor vehicle lessors)

21

on the customer's telephone bill, and ILD, a billing aggregator which gathers the charges for placement on telephone bills, violated the Florida  Deceptive and Unfair Trade Practices Act and were unjustly enriched under Florida common law for their role in the unauthorized charges appearing on plaintiffs' telephone bill.[13]   It is defendants' *conduct* which *resulted* in the unauthorized charges being placed on plaintiff's telephone bills, which plaintiff alleges gives rise to his state causes of action. "[C]onsumer protection is a field traditionally regulated by the states."  Cliff v. Payco General American Credits, Inc., 363 F.3d 1113, 1125 (11th Cir. 2004)(citing Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 135 (1963)) and there is a "presumption against finding implied preemption of state law in these fields."  Cliff, 363 F.3d at 1126 (citing Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)).

Nothing in the complaint alleging wrongdoing by a billing aggregator and an unauthorized vendor implicates any interstate carrier's Federal Universal Service Fund, as defendants contend, or would result in discriminatory rates, terms,

---

[13]   The fact that the  FCC  has disciplined a telecommunications *carrier* for "slamming" in violation of 47 U.S.C. §  258, and "cramming, in violation of 47 U.S.C. § 201(b), see In the Matter of Long Distance Direct, Inc., 15 F.C.C.R. 3297, 15 FCC Rcd. 3297, 2000 WL 177864 (F.C.C. Feb. 17, 2000), does not mandate that Eyler's lawsuit against ILD and TelSeven, as the third party unauthorized vendor and billing aggregator, falls under the Communications Act.  As to the "cramming" charge, the agency found that the common carrier's practice of including the unauthorized fees "was so inextricably intertwined with its marketing, billing and provision of long distance service that the practice was clearly 'in connection with' communication service," providing the FCC with jurisdiction to remedy violations of 47 U.S.C. § 201(b).  2000 Wl 177864, at * 3302.  Here, the common carrier has not been named.

conditions or practices for interstate carriers' services.  Further, to the extent the complaint is unclear from its face whether plaintiff's claims challenge the reasonableness or fairness of the practice of adding alleged unauthorized "dial-around" charges as opposed to  failure to disclose these practices, the court must strictly construe the removal statute and resolve all doubts in favor of remand.  Here, plaintiffs are not questioning the *reasonableness* of the rates or charges for the undisclosed and unauthorized "dial around" service; rather the complaint questions the undisclosed charge in its entirety.   Eyler's complaint does not state a substantial federal question.

### B.    The Class Action Fairness Act of 2005

The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in 28 U.S.C. §§  1332(d), 1453(b) et seq.), gives a federal court original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which - (A) any member of a class of plaintiffs is a citizen of a State different from any defendant."   28 U.S.C. § 1302(d) and (d)(2)(A).   CAFA sets forth at least four threshold requirements for a federal court to have subject matter jurisdiction over removed class actions: "(1) an amount in controversy requirement of an aggregate of $5,000,000 in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs; and

(4) a commonality requirement that the plaintiffs' claims involve common questions of law and fact." <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184, 1202-03 (11th Cir. 2007), <u>cert. denied</u>, 128 S.Ct. 2877 (2008).  By enacting CAFA in 2005, Congress sought to broaden federal jurisdiction over class actions with interstate implications. <u>Id.</u>, at 1193.

"'CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.'" <u>Lowery</u>, 483 F.3d at 1208 (quoting <u>Evans v. Walter Indus., Inc.</u>, 449 F.3d 1159, 1164 (11th Cir. 2006)).  In assessing whether removal is proper in a case in which plaintiffs challenge the removal by filing a timely motion to remand, "the district court has before it only the limited universe of evidence available when the motion to remand is filed - i.e., the notice of removal and accompanying documents.  If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." <u>Lowery</u>, 483 F.3d at 1213-15.

Under CAFA, the claims of the individual class members are aggregated to determine whether the matter in controversy exceeds the requisite $5,000,000 amount. 28 U.S.C. § 1332(d)(6).  When damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a "preponderance of the evidence," even where only the bare pleadings are available.  <u>Lowery</u>, 483 F.3d at

1208-10.  Mere assertions or speculations are insufficient to meet this burden; a defendant must provide specific evidence to show that jurisdiction exists.  Id. at 1214-15.  Thus, if the jurisdictional amount is either stated clearly on the face of the removal and remand documents or "readily deducible from them, then the court has jurisdiction.  If not, the court must remand.  Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate."  Id. at 1211.  "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking at the stars."  Id. at 1215.

In Lowery, the court held that the removing defendants were unable to establish by a preponderance of the evidence that plaintiffs' claims were potentially valued at more than $5 million in the aggregate.  Defendants' notice of removal contained only conclusory allegations that CAFA's jurisdictional amount was satisfied but provided no document clearly indicating that the aggregate value of plaintiff's claims exceeded $5 million.  Id. at 1218.

Plaintiff's complaint here alleges only that plaintiff Eyler was "injured" by defendants' conduct which resulted in the "cramming" of unauthorized charges on his telephone bill; that members of the putative class' "telephone bills contained charges placed there by ILD on behalf of TelSeven;" and that plaintiff "believes the number [of class members] to be in the thousands or hundreds of thousands."  (Doc. 2

25

(Complaint ¶¶ 4, 26, 29, 31, 34).)  Plaintiff's prayer for relief seeks a judgment "for all available economic, compensatory, consequential, and statutory damages" and injunctive relief, plus attorney's fees, interest, and costs.  (Doc. 2 at 13.)   The complaint does not specify the amount of damages sought nor any other concrete information about the aggregate value of plaintiffs' claims.

TelSeven's Notice of Removal states that "Plaintiff likely seeks damages that exceed the sum or value of $5,000,000.00, exclusive of interest, costs or attorney's fees. . . . [and] it is not inconceivable, and indeed is likely, that the compensatory damages that Plaintiff seeks to be awarded in this action exceed $5 million."  (Doc. 1 at 4 (Notice of Removal ¶¶ 9, 11).)  TelSeven supports this assertion by averring that "[t]he fee about which Plaintiff complains is the charge to him of $7.72 for a single call (this charge includes taxes, surcharges a federal universal service)."  (Id. (Notice of Removal ¶ 11).)  TelSeven then suggests that 650,000 unauthorized charges at $7.72 a piece would in the aggregate exceed the $5 million CAFA jurisdictional amount.  (Id.)  However, defendant  provides no basis for the 650,000 number - plaintiff only alleges that he "believes" the number of potential class members would be in the "thousands or hundreds of thousands."   Defendant's amended notice of removal adds nothing more concrete, other than an affidavit to support the $7.72 per call charge.  (Doc. 19-2.)  Indeed, the affidavit of the TelSeven official attached to the Amended Notice merely confirms that "Plaintiff has correctly alleged that during the

relevant time period in the complaint, TelSeven had customers numbering in the hundreds of thousands." (Doc. 19-2 at 2.)  Surely, if this TelSeven affiant could have supported a customer number of 650,000, as suggested by Defendants in their removal papers, or could have otherwise supported the $5 million threshold more concretely, he would have done so.  Moreover, defendants' citation of comments made by plaintiff's counsel to the news media (even if they can be credited) estimating damages of between "1 and 10 million" does nothing to establish by a preponderance of the evidence that the damages claim meets the $5 million threshold, even if attorneys' fees (which have not been estimated) were to be considered.  Lowery, 483 F.3d at 1221 (defendant's supplemented notice of removal was insufficient to establish jurisdiction as the record remained "bereft of detail").

To find that the putative class's claims in the aggregate exceed $5 million, based on this record, would require the Court "to engage in impermissible speculation."  Lowery,  483 F.3d at 1220.  Accordingly, TelSeven fails to meet its burden of establishing, by the preponderance of the evidence, that CAFA's jurisdictional amount in controversy requirement is satisfied.[14]

---

[14]    Inasmuch as the Court's determination that the removing defendant has failed to meet its burden to establish that this case satisfies CAFA's $5 million amount in controversy requirement is dispositive of the Court's lack of CAFA subject matter jurisdiction, the Court need not reach the question raised by plaintiff whether CAFA's "local controversy" exception, 28 U.S.C. § 1332(d)(4)(B) applies to preclude CAFA jurisdiction, although it appears very likely applicable.  Similarly, CAFA's discretionary "home state" exception, 28 U.S.C. § 1332(d)(3) may well be applicable to deny CAFA

### C.    Complete Diversity of Citizenship

Though in its notice of removal, TelSeven focuses primarily on removal under CAFA, defendant also asserts a conclusory allegation that: "Finally, there is complete diversity of citizenship between all parties and the jurisdictional amount of $75,000 exists such that removal is proper under 28 U.S.C. § 1332(a)," providing no further support, evidence or discussion of the allegation.  (Doc. 1 at 9 (Notice of Removal ¶ 22).)

Eyler alleges in his complaint that he "is, and was at all times material, a resident of Duval County, Florida," is a "retired person," and that he "is a residential telephone line subscriber, a member of the class . . . , and was injured by Defendants' conduct." (Doc. 2 at 2, 8 (Complaint ¶¶ 4, 38).)[15]  Further, he alleges that defendants TelSeven, a limited liability company, and ILD, a corporation, each have their principal place of business in Florida.  (Id. at 2 (Complaint ¶¶ 5, 7).)

Though for purposes of a complete diversity analysis under Section 1332(a), defendant TelSeven, a limited liability company whose sole member is a citizen of the British Virgin Islands, is not a "citizen" of Florida, see e.g. Rolling Hills MHP, L.P. v.

---

jurisdiction.

[15]    In traditional class actions, a court should consider only the citizenship of the named parties to determine whether there is diversity jurisdiction.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1288-89 (11th Cir. 1998); 28 U.S.C. §§ 1332(a); 1441(a).

Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004)(a limited liability company is deemed a citizen of any state of which any of its members are citizens), defendant ILD, a corporation with its principal place of business in Florida, is a citizen of the state of Florida.  Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994); 28 U.S.C. § 1332(c)(1).  Thus, complete diversity is destroyed if plaintiff Eyler is also a citizen of Florida.

In his motion to remand, Eyler states that "[t]he class representative in this case is a Florida citizen and many class members are Florida citizens;" this is based upon the allegation in the complaint that Eyler "'is, and was at all times material,[16] a resident of Duval County, Florida,'" (Doc. 2 at 2 (Complaint ¶ 4)), and thus, during the four year period covered by the complaint, Eyler was not a "resident" of another state.  This, contends Eyler, circumstantially establishes Eyler's Florida citizenship.  (Doc. 9 at 11-12.)[17]

Nowhere in its response to the motion to remand does defendant TelSeven dispute plaintiff's statement that Eyler is a citizen of Florida for purposes of diversity,

---

[16]   "All times material" as alleged in the complaint is "March 14, 2004 to the present."  (Doc. 2 at 6 (Complaint ¶ 31).)

[17]   Eyler has waived his objection to TelSeven's "complete diversity" removal of this case in which a "resident defendant" is named.  28 U.S.C. § 1441(b).  The resident defendant rule is procedural as opposed to jurisdictional, and may be waived. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1372 n.4 (11th Cir. 1998); Turner v. Pennsylvania Lumbermen's Mut. Fire Ins. Co., No. 3:07-cv-374-J-32TEM, 2007 WL 3104930, at * 5 n.9 (M.D. Fla. Oct. 22, 2007).

nor does it adduce any evidence to the contrary.  Thus, TelSeven has apparently abandoned its "complete diversity" basis for removal, or at best, failed to develop the argument.  As stated above, a defendant must provide specific evidence to show that jurisdiction exists, without which remand must be granted.  Lowery, 483 F.3d at 1215; see also Lazo v. U.S. Airways, Inc., No. 08-80391-CIV, 2008 WL 3926430, at *3 (S.D. Fla. Aug. 26, 2008)(defendant's merely stating that co-defendants are not Florida citizens would be insufficient to create diversity).  TelSeven has failed to carry its burden of establishing federal jurisdiction based upon complete diversity.  Diaz, 85 F.3d at 1505.

Furthermore, though not addressed by either party,[18] the Court finds that it does not have complete diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because TelSeven has failed to make any showing that Eyler's claim exceeds $75,000. Though alleging in its notice of removal that the case meets the $75,000 jurisdictional requirement for complete diversity under 28 U.S.C. § 1332(a), TelSeven specifies only that "[t]he fee about which Plaintiff complains is the charge to him of $7.72 for a single call (this charge includes taxes, surcharges and federal universal service)." (Doc. 1 at 4 (Notice of Removal ¶ 11); Doc. 19-2 at 2.)

Unlike CAFA, traditional class members generally may not aggregate their

---

[18]  A federal court must inquire *sua sponte* into the issue of jurisdiction when it appears that jurisdiction may be lacking.  Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000).

individual claims for compensatory damages to establish the requisite amount in controversy under 28 U.S.C. §  1332(a), <u>Morrison v. Allstate Indem. Co.</u>, 228 F.3d 1255, 1263 (11th Cir. 2000)(citing <u>Snyder v. Harris</u>, 394 U.S. 332, 335 (1969)), and "the claims of at least one of the individual plaintiffs must exceed the amount in controversy threshold for the court to assert jurisdiction."   <u>Lowery</u>, 483 F.3d at 1198 n. 31.  "[T]he claims of putative class members may only be aggregated to satisfy the amount in controversy requirement if the class members are suing to 'enforce a single title or right, in which they have a common and undivided interest.'"  <u>Morrison</u>, 228 F.3d at 1263 (citation omitted); <u>see also</u> <u>Friedman v. New York Life Ins. Co.</u>, 410 F.3d 1350, 1353-54 (11th Cir. 2005).  Because each putative class member here seeks recovery for deceptive practices and for unjust enrichment arising out of defendants' alleged unauthorized charges appearing on their individual telephone bills, their claims are separate and distinct, and accordingly, may not be aggregated.  <u>Id.</u>

For the foregoing reasons, this Court has no subject matter jurisdiction over this case.  It is hereby

**ORDERED**:

1. Plaintiff's Motion To Remand (Doc. 9) is **GRANTED**.

2. This case is **REMANDED** to the Circuit Court for the Seventh Judicial Circuit in and for St. Johns County, Florida.  The Clerk is directed to mail a certified copy of this Order to the Clerk of the Circuit Court for the Seventh Judicial Circuit and

to close the file.

     3.     The parties are to bear their own costs relating to the proceedings before this Court.

     **DONE AND ORDERED** at Jacksonville, Florida, this 25th day of November, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

jl.
Copies to:
Counsel of Record